[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12365
Non-Argument Calendar

_____

Agency No. A95-089-461

EDITH FUNEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 1, 2020)

Before WILSON, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Edith Funez, a Honduran citizen, seeks review of the Board of Immigration Appeals' ("BIA") denial of her motion to reopen her removal proceedings. Funez argues that the BIA erred when it refused to reopen her proceedings *sua sponte* based on the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). After careful review, we dismiss her petition in part for lack of jurisdiction and deny it in part.

## I.

The Department of Homeland Security ("DHS") served Funez with a Notice to Appear ("NTA") charging her as removable and ordering her to appear before an immigration judge ("IJ") "on a date to be set at a time to be set." AR at 769.[1] Nearly a month later, DHS served Funez with a "Notice of Hearing in Removal Proceedings," which stated that her removal hearing would be held on February 3, 2011 at 9:00 a.m. in Miami. *Id.* at 768. She appeared before the IJ and conceded removability.

Funez applied for cancellation of removal. At a hearing on her application, Funez testified that she entered the United States on October 2, 1997 but returned to Honduras in February 1998. She returned to the United States in October 1999. When the IJ asked about documents indicating that she had been present in the United States between February 1998 and October 1999, Funez testified that she

---

[1] "AR" refers to the administrative record.

2

was not sure where those documents had come from, as they appeared to have come from a third party. She further testified that her daughter suffered from a hernia and allergies, and her daughter's medical needs would be too expensive to care for in Honduras.

The IJ denied Funez's application for cancellation of removal, concluding that Funez had failed to show that her daughter's medical needs were an exceptional and extremely unusual hardship. Funez appealed, and the BIA remanded the case to the IJ for reconsideration of whether Funez's daughter would suffer if Funez were removed to Honduras. On remand, the IJ again denied her application. This time, the IJ found that Funez had failed to demonstrate continuous physical presence in the United States for the purposes of cancellation of removal. Funez appealed to the BIA, which affirmed.

Over two years later, Funez filed a motion to reopen her removal proceedings pursuant to 8 U.S.C. § 1229a(c)(7). She first argued that the BIA should reopen her case and remand to the IJ for rehearing because the IJ previously had erred in finding her ineligible for cancellation of removal. She explained that under the Supreme Court's decision in *Pereira*, her NTA was defective because it did not include the date and time of her removal hearing.[2] Thus, she argued, the

---

[2] In *Pereira v. Sessions*, the Supreme Court concluded that a putative NTA that does not specify either the time or place of removal proceedings does not trigger the stop-time rule for

3

NTA did not trigger the "stop-time" rule for cancellation of removal, and she was entitled to a rehearing to determine whether she had accrued the necessary time to be eligible for cancellation of removal.[3]  In the alternative, she argued that the BIA should treat her motion as a timely statutory motion to reopen, as she was entitled to equitable tolling because she had diligently pursued her *Pereira* claim and the decision in *Pereira* amounted to extraordinary circumstances.

The BIA denied Funez's motion to reopen.  The BIA first explained that the motion was untimely, as Funez filed it more than 90 days after the dismissal of her first appeal.  The BIA then "decline[d] to sua sponte reopen" Funez's case because it had held in a case decided after *Pereira* that a deficient NTA can be perfected by the later service of a Notice of Hearing that specifies the date and time of a removal hearing.  *Id.* at 3.  Thus, the BIA concluded that the Notice of Hearing served on Funez triggered the stop-time rule.

Funez petitioned this Court for review of the BIA's denial of her motion to reopen.

---

cancellation of removal and thus does not end the noncitizen's continuous physical presence in the United States for purposes of cancellation of removal.  138 S. Ct. 2105, 2110 (2018).

[3] The stop-time rule states that "any period of . . . continuous presence" for the purpose of determining eligibility for cancellation of removal is "deemed to end . . . when the alien is served a notice to appear under [8 U.S.C. §] 1229(a)."  *Id.* at 2114 (quoting 8 U.S.C. § 1229b(d)(1)).

## II.

We review *de novo* questions of subject matter jurisdiction, *Butka v. U.S. Att'y Gen.*, 827 F.3d 1278, 1282 n.4 (11th Cir. 2016), and issues of law, *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1152 (11th Cir. 2019). We review the denial of a statutory motion to reopen removal proceedings for an abuse of discretion. *Najjar v. Ashcroft*, 257 F.3d 1262, 1302 (11th Cir. 2001). Under abuse-of-discretion review, we limit our review "to determining whether the BIA exercised its discretion in an arbitrary or capricious manner." *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 872 (11th Cir. 2018). Where, as here, the BIA issues its own decision that does not adopt the decision of an IJ, we review only the BIA's decision. *See Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) ("We review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion." (citation and internal quotation marks omitted)).

## III.

In her petition, Funez argues that the BIA erred when it declined to reopen her proceedings because, under *Pereira*, her defective NTA did not trigger the stop-time rule. She also argues that her defective NTA deprived the IJ and BIA of jurisdiction over her removal proceedings.

Before considering Funez's arguments, we must determine the scope of our jurisdiction in this matter. We lack jurisdiction to review the BIA's decision not to

exercise its authority to reopen proceedings *sua sponte*. *Butka*, 827 F.3d at 1286.

Nevertheless, if a petitioner alleges "constitutional claims related to the BIA's

decision not to exercise its *sua sponte* power" to reopen, then we "may have

jurisdiction" over those claims. *Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1294 n.7

(11th Cir. 2008).

Here, to the extent that Funez claims the BIA erred in refusing to exercise its

*sua sponte* authority to reopen the proceedings, we lack jurisdiction to review this

claim. *See Butka*, 827 F.3d at 1286. The BIA rejected Funez's argument that

*Pereira* constituted a change in the law that warrants reopening, concluding that

*Pereira* did not support *sua sponte* reopening because the Notice of Hearing cured

any defect. Funez points to no colorable constitutional infirmities with the BIA's

decision not to reopen her proceedings *sua sponte* and, therefore, we cannot

exercise jurisdiction over it. *See Lenis*, 525 F.3d at 1294 n.7. We thus dismiss her

petition in this respect.[4]

---

[4] Notably, Funez has not challenged the BIA's denial of her motion to reopen on statutory grounds, which we do have jurisdiction to review. *See Mata v. Lynch*, 135 S. Ct. 2150, 2154–55 (2015) (explaining that "[w]hether the BIA rejects the alien's motion to reopen because it comes too late or because it falls short in some other respect, the courts have jurisdiction to review that decision"); *see also Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 870–71 (11th Cir. 2018) (discussing *Mata* and this Court's jurisdiction in the context of a motion to reopen that was denied based on statutory grounds in contrast to the BIA's refusal to exercise its *sua sponte* authority). She thus has abandoned any such challenge. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (noting that, where a petitioner does not raise an issue in her brief, the issue is deemed abandoned).

We do, however, retain jurisdiction to review her claim that her defective NTA deprived the IJ and BIA of jurisdiction over her removal proceedings. *See Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1153 (11th Cir. 2019) (noting that we "always have jurisdiction to determine our own jurisdiction," and we necessarily must determine whether there is a valid final order of removal granting us jurisdiction (citation and internal quotation marks omitted)). Funez is correct that her NTA was defective because it did not specify the time and place of her removal proceedings. *See* 8 U.S.C. § 1229(a)(1)(G)(i); *Pereira*, 138 S. Ct at 2113–14 (reasoning that a notice to appear that does not designate the time or place of the noncitizen's removal proceedings is "not a 'notice to appear under section 1229(a)'") (quoting 8 U.S.C. § 1229b(d)(1)). Nevertheless, her argument that her defective NTA stripped the IJ and BIA of jurisdiction is foreclosed by our precedent. Specifically, in *Perez-Sanchez*, we concluded that a defective NTA does not deprive the agency of jurisdiction over the removal proceedings because the statutory "time-and-place requirement" did not "create a jurisdictional rule," but instead was a "claim-processing rule." 935 F.3d at 1150, 1154–55. Thus, under our precedent, although Funez's NTA was defective for failing to specify the time and place of the removal hearing, the IJ and BIA properly exercised jurisdiction over her removal proceedings because the time-and-place requirement

7

in § 1229(a) is not a jurisdictional rule.  We deny Funez's petition for review in this respect.

## IV.

For the reasons discussed above, we dismiss Funez's petition for review to the extent it challenges the BIA's refusal to exercise its *sua sponte* authority to reopen her proceedings.  We otherwise deny the petition.

**PETITION DISMISSED IN PART; DENIED IN PART.**